IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE PERSON OF JEZIAH GUAGNO | Case Nos. 3:22mj194 and 3:22mj195 |

### MASTER AFFIDAVIT IN SUPPORT OF SEARCH WARRANTS AUTHORIZING THE COLLECTION OF DNA AND FINGERPRINTS

I, Louis Bronstein, being duly sworn, do hereby depose and state the following:

### INTRODUCTION

1. I am a Special Agent of the Federal Bureau of Investigation (FBI), United States Department of Justice, and have been so employed for more than seven years. I have conducted numerous investigations involving federal violent crime violations. As an FBI Special Agent, I have been involved in numerous searches and seizures pertaining to violent crime and other offenses through the use of search warrants.

### PURPOSE OF THE AFFIDAVIT

2. I submit this affidavit in support of an application for a search warrant authorizing the collection of Deoxyribonucleic Acid ("DNA") material (saliva and epithelial cells) by buccal swab from the mouth of, and fingerprints from the hands of, Jeziah Guagno ("GUAGNO"). GUAGNO is



the subject of a federal investigation involving the mailing of threatening communications to Middle District of Florida Federal District Judge Harvey E. Schlesinger, in violation of 18 U.S.C. § 876(c). As set forth below, the collection of GUAGNO's DNA and fingerprints will provide evidence related to this crime.

3. The facts set forth in this affidavit are based on my personal knowledge, my review of relevant records, and information I have obtained from other law enforcement officers who have also participated in this investigation. As this affidavit is intended to show only that there is sufficient probable cause for the requested warrant, it does not set forth all of my knowledge about this matter.

**PROBABLE CAUSE**

4. On or about May 20, 2021, personnel in the chambers of Middle District of Florida District Judge Harvey E. Schlesinger received an envelope addressed to Judge Schlesinger from inmate Mack Simmons ("Simmons") in the Santa Rosa Correctional Institution, a State of Florida prison.[1] The envelope contained a handwritten letter that included threats to the lives of Judge Schlesinger and his wife. Images of the envelope and letter are below:

---

[1] The prison is located in Milton, Florida. This location is within the Northern District of Florida and is subject to the Pensacola District Court's jurisdiction.

```
MALO S.xxxxx
x: 163729
Jxxx Sxx oxxxxx xxx Inxxxxxx
5xx G xxxx Rx.
Wxxxx, Fxx 32523
```



```
PENSACOLA FL 325
17 MAY 2021 PM 2  L
CORRECTIONAL INSTITUTION
```

Judge Harvey E. Schlesinger
United States District Court
Middle District of Florida
300 Washington Street, Suite 9-150
Jacksonville, Fla 32202-4271

32202-427175

---

Judge Harvey E. Schlesinger Listen closely Im the 3rd floor for the DBD gang I operate out of Milton, Fla I know where you and your family live. So if you want to stay alive past the next 60 days your best bet is to not get anybody involved in this. Now this is how it's going to go down, Im going to file a motion under Newly discovered evidence to your district court and you are going to make it your duty to pick this case up. Then when it lands in your court room you are going to rule in my favor and dismiss my charges. If you refuse to meet my demands Im going to rape your wife and kill her then while your watching Anal fuck her. Then Im going to chop your dick off then your head and fingers and mail them to your children~ so it's in your best interest to comply.

---

5. Upon receiving the letter, court personnel notified the United States Marshals Service who took custody of the items. The envelope and letter were later transferred to the FBI.

3

6. A deputy U.S. Marshal ("USM") interviewed Simmons after determining that he was indeed an inmate located in the Santa Rosa prison. After being read his constitutional rights, Simmons agreed to speak with the USM. He denied any knowledge of the letter and claimed that someone in the prison was likely trying to frame him. He declined to provide any information about who might attempt to do so. Later, Simmons freely consented to providing a buccal swab of the inside of his mouth and cheek.

7. The letter and envelope were submitted to the FBI laboratory for DNA and fingerprint processing. Lab personnel swabbed the envelope and conducted an analysis of the acquired sample. A DNA profile was developed which contained three contributors and male DNA was detected. A DNA analyst conducted a comparison of the known DNA sample from the buccal swab of Simmons to the profile developed from the envelope. Simmons was excluded as a contributor to the profile.

8. Latent fingerprint processing was also performed by FBI lab personnel. A latent print examiner developed a palm print that was suitable for comparison. The palm print was located on the letter. The palm print was submitted into the FBI's Next Generation Identification ("NGI")[2] database for

---

[2] NGI is a large-scale forensic repository of biometric and criminal history information. Among other things such as facial recognition technology, the system maintains fingerprints and palm prints and biographical information of

possible identification to previously submitted fingerprints maintained within the database. The NGI database provided a known print of GUAGNO as a possible candidate for identification to the print obtained from the letter. Subsequently, the examiner performed a comparison to the NGI print and concluded that the print found on the letter was identified to GUAGNO.[3]

9. After learning that GUAGNO's print had been found on the letter, a search revealed that GUAGNO is also housed at the Santa Rosa prison; he was also there at the time the letter was received by Judge Schlesinger. Further search revealed that he had previously filed a civil complaint before Judge Schlesinger.[4] The complaint claimed that GUAGNO had been assaulted at another correctional institution and requested relief in the form of the initiation of a criminal investigation into the incident. Because the complaint did not request a valid form of relief, Judge Schlesinger dismissed GUAGNO's complaint and provided directions should GUAGNO intend to file a federal

---

individuals whose prints have been identified. Examiners can submit developed prints into the system which will automatically compare the prints and provide preliminary results of possible identifications.

[3] This affidavit is submitted in support of a search warrant to retrieve fingerprints and palm prints from GUAGNO, though only a palm print has thus far been identified to him. However, the latent print examiner discontinued further analysis after GUAGNO's handprint was identified. The analyst notified me that there may be other prints (both finger and palm) that will be suitable for comparison once known prints are retrieved from GUAGNO.

[4] *See* Middle District of Florida case number 3:20-cv-01369-HES-PDB.

5

civil rights lawsuit, pursuant to 42 U.S.C. § 1983. More to the issue at hand, no connections could be found between Simmons and Judge Schlesinger or any other inmate in the Santa Rosa prison housed at the time the letter was received.

10. Rather than reveal the investigation to GUAGNO, I requested that prison officials retrieve items suspected to belong to GUAGNO from his prison cell in order to obtain DNA for comparison to the profile developed from the envelope. GUAGNO shares a cell with another inmate, but personal items suspected to belong specifically to him were retrieved. For example, prison officials seized a hairbrush, toothbrush, and chapstick from GUAGNO's cell that were kept close to his bed.[5]

11. The items were submitted to the FBI lab for DNA analysis. Male DNA from a single individual was developed from the chapstick. Presuming that the DNA was in fact GUAGNO's, a DNA analyst compared the sample to the profile developed from the envelope. On or about March 3, 2022, the analyst concluded that it is 4.7 trillion times more likely that GUAGNO and two unknown people are contributors to the DNA profile than three unknown

---

[5] Because of the nature of prison and the need to maintain order and safety, inmates and their cells are subject to routine searches without the need for a search warrant. Under the guise of a routine search, these items were seized.

6

contributors. According to the FBI's likelihood ratios, this is "very strong support for inclusion." This is the highest level of support.

12. Handwriting analysis was also performed which compared the handwriting on the letter to the handwriting submitted in the complaint filed by GUAGNO in the civil case. An FBI analyst concluded that there were "characteristics in common" indicating that GUAGNO may have written the letter.[6]

13. The letter was mailed via the U.S. Postal Service ("USPS"). As noted on the postage, it was stamped as processed by the USPS on May 17, 2021, and shipped to the listed address. As such, GUAGNO caused the letter containing the threats to Judge Schlesinger and his wife to be delivered by the USPS.[7]

---

[6] The analyst's opinion is limited because a conclusion specifically identifying or excluding GUAGNO as the writer of the letter cannot be provided without GUAGNO submitting an additional exemplar copying the words of the letter. The analyst requires the same word/sentence formations to draw definitive conclusions. Even then, the analyst notes that the science is inexact. Still, as noted above, the analyst observed similarities between the writing in the complaint and in the letter. I submit this is further evidence of probable cause that GUAGNO authored the letter and sent it to Judge Schlesinger.

[7] See 18 U.S.C. § 876(a) and (c): "Whoever…knowingly causes to be delivered by the Postal Service…any communication…containing any threat to kidnap any person or any threat to injure the person of the addressee or of another, shall be fined under this title or imprisoned not more than five years, or both. If such a communication is addressed to a United States judge…the individual shall be fined under this title, imprisoned not more than 10 years, or both."

## REQUEST FOR COMPARABLE SAMPLES

14. Based on my law enforcement training, experience, and consultation with forensic experts, I know that DNA is a molecular material found in virtually all cells of the body. DNA from a person's blood is the same DNA from a person's sweat, saliva, and body tissue. It is possible to obtain a sample of a person's DNA from clothing they wore, from objects they handled, or from traces of sweat, blood, semen, or body tissue left at a crime scene. A forensic DNA examiner can examine such DNA samples and obtain multiple genetic markers, which comprise a genetic profile. An examiner can compare a genetic profile developed from a crime sample with a comparative sample collected from a known individual. With this comparison, an examiner often can conclude, with reasonable scientific certainty, whether the DNA from a crime scene sample matches that of a known individual. Comparative samples are commonly collected by a buccal swab, a method by which a sterile swab is used to collect the cell samples from inside of an individual's mouth. This is the method I intend to use in this case.

15. Likewise, I know that friction ridge skin consists of ridges, which are raised portions of skin, and furrows, which are the valleys in between the ridges. Friction ridge skin is found on the fingers, palms, and soles of the feet. A friction ridge print is a reproduction of the friction ridge features when the

8

skin comes into contact with an item. Items of evidence submitted for friction ridge print examinations may be examined visually, and with various light sources, and processed with chemicals and powders to detect the presence of friction ridge prints. The specific sequence of examinations and processes depends upon the nature of the evidence. In a given case, an individual's friction ridge prints can be retrieved by "rolling" the individuals fingers and palms in ink and applying them to a standardized fingerprint card. The results can then be compared to other friction ridge prints obtained from items of evidentiary value (such as the letter and envelope) by qualified latent print examiners. This is necessary, even where preliminary results from a database indicates that an individual's prints in the system match those found on the items, so that the examiner can confirm the results, compare the known prints to others on the items that may otherwise be inconclusive, and to allow for testimony in court. Rolling the defendant's fingerprints and palm prints as described above is the method I intend to use.

16. Based on the above facts, I believe probable cause exists that GUAGNO authored and mailed the letter to Judge Schlesinger. Preliminary DNA and fingerprint analysis has already concluded that GUAGNO touched both the letter and the envelope. All that is left is for known samples of

9

GUAGNO's DNA and fingerprints to be submitted so that analysts can confirm the previous analyses.

## CONCLUSION

17. Based on the foregoing, I respectfully submit that there is probable cause to believe that saliva and epithelial cells taken from GUAGNO by buccal swabs, and fingerprints/handprints taken from GUAGNO, will provide evidence relating to a violation of 18 U.S.C. § 876(c).

Louis Bronstein
Special Agent, FBI

Subscribed and sworn to before me on this 23rd day of March, 2022, in Pensacola, Florida, in that the above affiant attested to the contents of the foregoing written affidavit via reliable electronic means.

ELIZABETH M. TIMOTHY
Chief United States Magistrate Judge